IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| PHYLLIS L. LYON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 05-0412-CV-W-NKL-SSA |
| ) | |
| JO ANNE B. BARNHART, ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

ORDER

Pending before the Court is Plaintiff Phyllis L. Lyon's ("Lyon") Motion for Summary Judgment [Doc. # 10]. Lyon seeks judicial review of the Commissioner's June 13, 2003, determination that as of August 1, 1997, Lyon was no longer entitled to disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401, *et seq.*, or supplemental security income (SSI) benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq.* The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary.[1] Because the Court finds that the Administrative Law Judge's decision was supported by substantial evidence in the record as a whole, the Court affirms the ALJ's decision.

---

[1] Upon review of the record and the law, the Court finds the Defendant's position persuasive. Portions of the Defendant's brief are adopted without quotation designated.

1

## I. Background

### A. Procedural Posture

Lyon was originally awarded disability benefits based on a finding of disability beginning May 18, 1992, pursuant to a favorable decision by an Administrative Law Judge dated February 23, 1994. (Tr. 385-87.) That determination was based on symptoms of chronic lymphedema of the left arm and loss of grip strength of left hand and weakness of the left arm secondary to occlusive venous disease of the left brachiocephalic vein and auxiliary vein requiring regular anticoagulant treatment and frequent hospitalizations for heparin infusions; she also had chondrromalacia patella on the right. (Tr. 386.)

In August 1997, the SSA conducted a disability review. The SSA determined that Lyon's medical condition had significantly improved and her period of disability ceased effective August 1, 1997. As SSA considered Lyon not under a "disability," her entitlement to disability insurance benefits ceased, effective October 1, 1997. In response to SSA's determination, Lyons filed a timely Request for Hearing. On June 22, 1999, following the hearing, an ALJ found that her disability had ceased on August 1, 1997. (Tr. 701-08.) On June 8, 2001, the Appeals Council of the Social Security Administration granted Lyon's request for review, vacated the ALJ's decision and remanded the case to the ALJ. (Tr. 718-19.) On July 23, 2001, without holding a second hearing, the same ALJ who made the June 22, 1999, decision, again rendered a decision in which he found that Lyon's disability had ceased on August 1, 1997. (Tr. 824-33.) On January 31, 2003,

2

the Appeals Council again granted Lyon's request for review, vacated the ALJ's decision and remanded the case to the ALJ. (Tr. 845-46.) On June 13, 2003, following a new hearing, a different ALJ found that Lyon's disability ceased on August 1, 1997. (Tr. 19-29.) On February 28, 2005, the Appeals Council of the Social Security Administration denied Lyon's request for review. (Tr. 2, 9-12.) Thus, the June 13, 2003, decision of the ALJ stands as the final decision of the Commissioner. Lyon appeals that decision to the District Court.

**B.    Medical History – 1997 to 2003**

During March and April 1997, Lyon underwent two procedures. Operative notes from Shawnee Mission Medical Center (SMMC), dated March 13, 1997, indicate that a colonoscopy was completed due to abdominal pain. Possible irritable bowel was the diagnosis. The doctor recommended fiber therapy and gave a trial of Levsin. (Tr. 510.) On April 23, 1997, Dr. Brendan Mitchell performed a diagnostic laparoscopy due to Lyon's pelvic pain. (Tr. 507.)

Lyon underwent a Disability Evaluation with Dr. Allen J. Parmet, M.D., M.P.H., FACPM, of Midwest Occupational Medicine, on July 8, 1997. According to the evaluation, the only work related restrictions were lifting, handling and carrying objects with her left hand. (Tr. 572-75.)

Lyon also received treatment for various other medical problems. A visit to Cass Medical Center (CMC), dated February 18, 1998, revealed that Lyon was diagnosed with a thrombosed external hemorrhoid. An I&D was performed and she was put on stool

3

softeners. (Tr. 581.) Additional notes from CMC, dated January 14, 1998, show she had a sebaceous cyst that was excised in the clinic. (Tr. 584.) On August 6, 1998, CMC performed a chest x-ray which showed that her chest was normal and clear. (Tr. 639.) Cass County Hospital notes, dated January 7, 1999, show Lyon was seen for dizziness and back pain; treated with naprosyn, direct heat, and antivert; and released. (Tr. 643.)

In November 2000, Lyon received ovarian cyst treatment. CMC notes, dated November 13, 2000, show an admission for an ovarian cyst condition. Cipro and Flagyl were prescribed and Lyon was required to stay off work until evaluated by Dr. Sullivan. (Tr. 761.) A pelvic sonogram conducted two days later evidenced a simple cyst on the right ovary approx 2 cm in diameter. (Tr. 776-77.)

On March 16, 2001, CMC examined Lyon's right knee. A MRI showed an undersurface tear involving the posterior horn of the lateral meniscus with associated joint effusion and osteoarthrosis. (Tr. 738.) On January 11, 2001, she was treated for diabetes, hypercholesterolemia as well as headaches and an ingrown toenail. (Tr. 879.) Garden City Clinical notes, dated January 22, 2001, indicate that Lyon was seen for follow up from toenail removal. (Tr. 878.) On February 19, 2001, she received treatment for right leg pain and sore throat. (Tr. 877.) Notes from Garden City Clinic, dated March 5, 2001, indicated that Lyon was treated for knee pain from a previous on-the-job injury and was wearing an immobilizer. (Tr. 875.) On April 2, 2001, she was treated for sore throat, cough, and swollen glands. (Tr. 874.)

Kansas City Bone & Joint Clinic conducted a MRI on March 16, 2001, indicating apparent attritional tearing lateral meniscus posterior horn with diffuse osteoarthritis involvement. (Tr. 893-94.) On July 31, 2001, Garden City Clinic treated Lyon for sinusitis. (Tr. 917.) Several months later, in December 2001, she received treatment for left ear pain and depression unresponsive to Zoloft medication. (Tr. 913.) Notes from Garden City, dated September 6, 2002, indicate that Lyon was treated for uncontrolled diabetes, fatigue and nausea. (Tr. 905.) On September 8, 2002, Cass Medical Center diagnosed a negative CT of the head. (Tr. 1010.) Later in November 2002, Lyon developed bronchitis and phatyngitis and was treated by Garden City Clinic. (Tr. 902.) In early 2003, Lyon again sought treatment at Garden City Clinic for additional complications. On January 10, 2003, she was treated for headaches, given Fioricet; told to keep a headache diary; and follow up if this problem persists. (Tr. 899.) On February 3, 2003 and February 6, 2003, she was again seen for headaches. (Tr. 897.) Notes from Garden City Clinic dated March 11, 2003, indicated treatment for bronchitis, pharyngitis and chest wall pain. (Tr. 1019.)

### C. May 22, 2003, Administrative Hearing

Lyon is appealing the decision of ALJ William Horne following an administrative hearing held on May 22, 2003, at which Lyon was represented by her attorney. At the hearing, the ALJ heard testimony from Lyon, Henry K. Freedman, and Richard Sherman. At the time of the hearing, Lyon was forty-three years old, resided in Creighton, Missouri, and had a GED and an Associates Degree in Arts. (Tr. 32.) Lyon testified that she lived

in a 1½ story house with her son and her husband, that she cooked for them as much as possible but did not perform many chores. She further testified that she did not do any yard work. She had a valid driver's license and drove a car to the grocery store. (Tr. 58.)

During examination by counsel, Lyon testified that she has problems with her left shoulder. Since October 1997, she claimed to experience constant pain and swelling of her shoulder preventing all lifting with that arm. She further testified that her grasp is poor and she cannot hold anything in her hand. (Tr. 40.) Lyon testified that she has had a blood clot in her shoulder since 1992. (Tr. 40.) Although Lyon had previously received Coumadin for the treatment of her blood clots, she was presently receiving only aspirin therapy. (Tr 40-41.) She further testified that her grip strength had not improved, and that she could lift probably no more than five pounds. (Tr. 41.)

Lyon also testified that she suffers from knee problems. Since 1997, her right knee is often swollen and painful. She indicated that she takes anti-inflammatory pills daily. (Tr. 41.) She further testified that, in 1997, she could not stand or walk more than two hours in an eight hour day. Now, it begins to hurt after standing for 20 to 30 minutes. (Tr. 42.)

Lyon testified that she has also developed diabetes since 1997, monitors her blood sugar four times a day, and has taken insulin shots twice a day for about nine or ten months. (Tr. 43.) She testified that her blood sugars run anywhere from 200's to 250, and the highest it had been was 330 and the lowest was 90. (Tr. 61.) She testified that she has neuropathy in her feet, describing it as a tingling type of feeling in that you might not

6

notice if you hit your foot or something. (Tr. 62.) Also since 1997, Lyon testified that she has suffered abdominal pain due to problems with her colon and ovaries, and had been hospitalized for this condition. (Tr. 43.) She further testified that, "they couldn't do surgery or anything" so she has been prescribed "pills and stuff for it." (Tr. 43.) She testified to suffering migraine headaches, hypothyroidism, and hypocholesterolemia. For these conditions, she takes medications daily and the medications make her "real tired all the time." (Tr. 43-44.) She further testified that she suffered from hemorrhoids and vertigo. She described her vertigo condition as "[j]ust being off balance and feeling like the room is spinning around in circles and really bad, really terrible feeling." (Tr. 44-45.)

Lyon testified that she experiences anxiety and mood swings. She indicated that she had psychological counseling with psychologist, Dr. Rick Thayer. (Tr. 64.) Within a two to three year period, she received treatment once every four or five months for one hour. (Tr. 64-65.) She further testified that she had anxiety attacks at least two or three times a week lasting about an hour, and that stress brings about these attacks. (Tr. 65.) She said has had crying spells at least four times a week. (Tr. 65-66.) She has been prescribed Prozac in the past, but currently takes Zoloft. She further testified that she takes Vicodin for pain. (Tr. 45-46.) According to her, these conditions have resulted in "very bad" problems with concentration which interferes with her ability to work. (Tr. 46.) Lyon testified that she has to lie down and rest during the day, often taking an hour long nap before dinner nap. She also indicated that she sleeps more during the weekends. (Tr. 46.)

7

In 2000, Lyon testified that she completed her Associate's degree at Longview Community College, completing 20 hours of classes. (Tr. 47.) After obtaining her degree, Lyon took a position as a teacher's aid in which she worked once or twice a week. (Tr. 47-48.) She further testified that she worked some half and full days, essentially whenever she was needed. (Tr. 48.) During her last year, she further testified that she worked more regularly with one handicapped child. (Tr. 48.) Although she was scheduled to work every day, she testified that she called in sick frequently. Lyon accumulated ten sick days in nine months, and she used all ten sick days. In the last nine months of 2000, she called in sick twenty-five days. (Tr. 49.) Due to her absences, she testified that the employer would not ask her to work again. (Tr. 49.)

Subsequently, Lyon obtained part-time employment at State Fair Community College, doing paperwork and giving students information. (Tr. 50.) She further testified that she was supposed to work twenty hours a week, but she often missed work. She eventually worked twelve to thirteen hours a week. (Tr. 50.) Her contract was ending the month after the hearing, and Lyon testified that her employer was not going to renew her contract. (Tr 50.)

During the 2001-2002 school year, Lyon also worked part-time at a Harley-Davidson dealer, stocking items, pricing clothes and other merchandise. (Tr. 50-51). She testified that she worked for about ten to eleven months before hurting her leg. (Tr. 51). She testified that she was absent from work due to sickness about four times per month, and her employer would get upset. (Tr. 52.) Lyon's earnings record

8

shows that she earned $1,084.00 in 1999, $10,786.00 in 2000, $6,598.00 in 2001, and $15,476.00 in 2002. (Tr. 1025.) She testified that she had to take off work to come to the hearing. (Tr. 74.)

Lyon testified that she has had all kinds of little accidents. She testified that she was bitten by a spider and cut with the weed eater. (Tr. 53.) Lyon testified that her diabetes often affects her recovery from these accidents. (Tr. 53-54.) She further testified that if she gets a cold, it takes her two weeks to get over it. She indicated that the spider bite still had not healed. (Tr. 54.) She indicated that since 1997 she has had at least 25 emergency room visits. (Tr. 67.) She also testified that, since 1997, she has problems sleeping at night in that she cannot get comfortable. (Tr. 55.) Lyon also indicated that she had reached the early stages of menopause and was taking hormone pills. (Tr. 56.)

Following Lyon's testimony, the ALJ took testimony, via telephone, from Dr. Henry K. Freedman, the medical expert. At the outset, Dr. Freedman testified that he would not speak to Lyon's psychiatric condition, "because I am really not qualified in psychiatry." (Tr. 78.) He then testified as to his review of Lyon's medical records, in particular her evaluations by Allen J. Parmet, M.D., and Michael F. Perll, M.D.

Dr. Parmet had examined Plaintiff on July 8, 1997. (Tr. 572-78.) Dr. Parmet found that Lyon's upper extremities demonstrated normal strength and range of motion bilaterally. (Tr. 574.) Examination of Lyon's cervical and lumbar spines, as well as her lower extremities, was also normal. (Tr. 574.) In regard to work-related activities, Dr.

9

Case 4:05-cv-00412-NKL   Document 14   Filed 05/16/06   Page 9 of 20

Parmet stated that, "There are no physical activities including sitting, standing, walking, hearing, speaking, or traveling that cannot be performed by this patient." (Tr. 575.) Dr. Parmet did say that Lyon was restricted in lifting handling and carrying objects with her left hand, but saw no restrictions to the right arm. (Tr. 576.) Dr. Parmet found that, regarding Lyon's mental abilities, there were no work-related activities including understanding and memory, sustained concentration and persistence, social interaction, or adaption that could not be performed by Lyon. (Tr. 576.)

Dr. Perll examined Lyon on April 1, 1998. (Tr. 625-28.) Dr. Perll found that range of motion of Lyon's shoulders was within normal limits. (Tr. 627.) Lyon had full grip strength and was able to perform fine motor movements without difficulty. (Tr. 626-27.) Dr. Perll found no clinical evidence of venous or arterial occlusion, and no evidence of edema or dysfunction of the left upper extremity based on that examination. (Tr. 626.)

Based on these medical evaluations, medical expert, Henry K. Freedman, M.D., testified at the hearing that Lyon was no longer disabled. (Tr. 78, 81.) On cross examination, Dr. Freedman admitted that he had relied on the medical evaluation of Drs. Parmet and Perll. He stated that he had not seen any statements by Lyon's treating physicians indicating that she was still disabled.

Vocational expert, Richard Sherman, then testified that Lyon had worked as a substitute teacher at the semi-skilled exertional level; stock clerk and sales clerk, light and sedentary level at the semi-skilled and unskilled; office assistant, semi-skilled;

10

paraprofessional, semi-skilled and light. (Tr. 101-102.). Given a hypothetical 37 year old woman with the limitations Lyon has to her left arm, Sherman testified that such a woman could still work as a cashier. (Tr. 104.) Lyon's attorney then added further hypothetical limitations, including an inability to stand more than two hours a day and anxiety attacks, depression, and crying spells that would incapacitate the woman for 60 minutes at a time at least once a week. With these added criteria, Sherman testified that the hypothetical woman could not work any of Lyon's former relevant jobs.

## II.     Discussion

After consideration of the record, the ALJ found that Lyon no longer had a disabling impairment. The ALJ further found that for at least the years 2000 and 2002, Lyon engaged in substantial gainful activity. (Tr. 28.) The ALJ found Lyon did not have any impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. § 404, Subpart P, Appendix 1, Regulations No. 4. (Tr. 28.) He further found that Lyon's impairments would not preclude her from performing jobs existing in significant numbers in the national economy. (Tr. 29.) Accordingly, the ALJ found that Lyon was no longer disabled. (Tr. 28-29.) That finding is supported by substantial evidence in the record as a whole.

### A.      Is There Substantial Evidence of Improvement Related to Lyon's Ability to Work?

Once a claimant becomes entitled to disability benefits, her continued entitlement to benefits must be reviewed periodically. 20 C.F.R. § 404.1594(a). If there has been medical improvement related to the claimant's ability to work, and the claimant is able to

11

engage in substantial gainful activity, then a finding of not disabled will be appropriate. *Id. See also Nelson v. Sullivan*, 946 F.2d 1314, 1315 (8th Cir. 1991). Medical improvement is defined as the decrease in the medical severity of the impairment(s) which were present at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled. 20 C.F.R. § 404.1594(b)(1). The decision concerning whether or not a claimant's condition has improved is primarily a factual inquiry which often depends on the credibility to be given various witnesses, a responsibility given to the trier of fact. *See Nelson*, 946 F.2d at 1316; *Benskin v. Bowen*, 830 F.2d 878, 883 (8th Cir. 1987).

In this case the ALJ noted that the comparison point decision in this case was the decision dated May 18, 1992. (Tr. 28.) At that time, the first ALJ found that Lyon was disabled based on a residual functional capacity to stand and/or walk for no greater than 30 minutes at a time and for no more than two hours in an eight hour day, and lift and carry no more than five pounds occasionally. (Tr. 386.) That ALJ further found Lyon had an affected ability to reach, handle, push and pull, was prevented from climbing, kneeling, crawling, and could only occasionally balance, stoop or crouch. (Tr. 386.)

The ALJ conducting the 2003 hearing identified medical evidence that showed medical improvement. (Tr. 27.) The new ALJ noted that based on a physical examination, Dr. Parmet found that Lyon's upper extremities demonstrated normal strength and range of motion bilaterally. (Tr. 24, 574.) Examination of Lyon's cervical and lumbar spines, as well as her lower extremities, were also normal. (Tr. 24, 574.) The

12

new ALJ also considered Dr. Perll's April 1, 1998, consultative examination which demonstrated that range of motion of Lyon's shoulders was within normal limits. (Tr. 24, 627.) Lyon had full grip strength and Lyon was able to perform fine motor movements without difficulty. (Tr. 24, 626-27.) Finally, the new ALJ noted that the medical expert at the hearing, Dr. Freedman, testified that Lyon had significantly improved and so was no longer disabled. (Tr. 24, 78, 81.) Comparing the medical opinions of Drs. Parmet, Perll, and Freedman to the residual functional findings of the original ALJ who found Lyon disabled, the new ALJ found an improvement in Lyon's condition related to her ability to work. (Tr. 386.) These facts constitute substantial objective evidence that Lyon had improved in the areas that had previously limited her ability to work; particularly, because Lyon has not provided evidence from a treating physician between 1994 and 1997 that contradicts those findings.

Once the Commissioner has demonstrated such an improvement exists, the allocation of burdens is the same as in an initial claim. 20 C.F.R.§ 404.1512, § 404.1594(f)(6-7).

> **B.** **The ALJ Properly Found Lyon Performed Substantial Gainful Activity in 2000 and 2002.**

The regulations at 20 C.F.R. § § 404.1571 and 416.971 provide that if a claimant can engage in substantial gainful activity, she is considered not disabled without consideration of medical or vocational factors. Work is "substantial" if it involves significant physical or mental activities, and work is "gainful" if it is done for profit or is of the type done for profit regardless of whether or not a profit is realized. *See* 20 C.F.R.

§§ 404.1572(a) and (b), and §§ 416.972(a) and (b) (2005).  Work may be substantial even if it is done on a part-time basis or if the claimant does less, gets paid less, or has less responsibility than previous work.  *See* 20 C.F.R. § 404.1572(a) (2000).

In this case, it is undisputed that Lyon engaged in substantial gainful activity in at least 2000 and 2002.  (Tr. 1025.)  Lyon's earnings record shows that she earned $10,786.00 in 2000, and $15,476.00 in 2002.  (Tr. 1025.)  These earnings were well in excess of the amount of presumptive substantial gainful activity for 2000 of $8,400.00 ($700.00 a month), and for 2002, of $9,360.00 ($780.00 a month).  *See* 20 C.F.R. §§ 404.1574(b)(2)(i-ii)(B), 416.920(b)(2)(i-ii)(B); Programs Operation Manual System (POMS) DI 10501.015, http://policy.ssa.gov/poms.nsf/lnx/0410501015.  Thus, Lyon is not disabled in those years without any consideration of medical or vocational evidence.

Lyon argues that her substantial gainful activity in the years 2000 and 2002 were unsuccessful work attempts.  Pl. Brief, at 22.  Under 20 C.F.R. § 404.1574, the Commissioner will generally consider work that a claimant is forced to stop after a short period of time due to an impairment as an unsuccessful work attempt, and earnings from that work will not show the ability to perform substantial gainful activity.  *See* 20 C.F.R. § 1574(a)(1) and Social Security Ruling (SSR) 84-25.  Substantial gainful activity performed longer than six months, however, cannot be considered an unsuccessful work attempt.  *See* 20 C.F.R. § 404.1574(c)(5).  In this case, Lyon engaged in substantial gainful activity in two separate years.  (Tr. 1025.)  Thus, Lyon's work cannot be

considered an unsuccessful work attempt. The ALJ's determination that Lyon has engaged in substantial gainful activity is supported by substantial evidence.

### C. The ALJ Properly Assessed Lyon's RFC Based on All the Credible Evidence

The ALJ's decision is consistent with the standard for evaluating pain and other subjective complaints as set forth in *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984), and the regulations at 20 C.F.R. §§ 404.1529, 416.929. In *Polaski*, the Eighth Circuit set forth factors the Commissioner must consider in evaluating subjective complaints.

The ALJ noted that the objective medical evidence in this case both demonstrates physical improvement and does not support a finding of disability. (Tr. 18.) Dr. Parmet found that Lyon's upper extremities demonstrated normal strength and range of motion bilaterally. (Tr. 574 .) Examination of Lyon's cervical and lumbar spines, as well as her lower extremities, was also normal. (Tr. 574.) Dr. Perll's examination found range of motion of Lyon's shoulders was normal. (Tr. 627.) Lyon had full grip strength and was able to perform fine motor movements without difficulty. (Tr. 626-27.)

In addition, Dr. Parmet stated that, "There are no physical activities including sitting, standing, walking, hearing, speaking, or traveling that cannot be performed by this patient." (Tr. 575.) Moreover, regarding Lyon's mental impairments, Dr. Parmet found there were no work-related activities including understanding and memory, sustained concentration and persistence, social interaction, or adaption that could not be performed by Lyon. (Tr. 576.)

Furthermore, Lyon performed substantial gainful activity in 2000 and 2002, and

15

performed significant work in 2001. Lyon's earnings record shows that she earned $1,084.00 in 1999, $10,786.00 in 2000, $6,598.00 in 2001, and $15,476.00 in 2002. (Tr. 1025.) Work performed during any period in which Lyon alleges that she was under a disability may demonstrate an ability to perform substantial gainful activity. *See* 20 C.F.R. §§ 404.1571, 416.971; *Naber v. Shalala*, 22 F.3d 186, 188-89 (8th Cir. 1994). As the Eighth Circuit has recently stated, "Working generally demonstrates an ability to perform a substantial gainful activity." *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005).

During the relevant time period, Lyon engaged in extensive daily activities that are inconsistent with her alleged disability. Most significant was Lyon's extensive work activities. (Tr. 74, 1025.) But equally noteworthy is the fact that Lyon earned an Associate of Arts degree in 2000. (Tr. 24, 32-33, 47.) While daily activities alone generally do not disprove disability, *see Wilson v. Chater*, 76 F.3d 238, 241 (8th Cir. 1996), in this case Lyon's daily activities provide strong evidence that she can perform substantial gainful activity.

The ALJ also noted that Lyon had only sporadic medical treatment for her alleged left upper extremity problems since her cessation date. (Tr. 26.) The Eighth Circuit has noted that the fact that a claimant had not sought treatment from any physicians in the seven months prior to the administrative hearing was a legitimate factor in discounting her subjective complaints. *Moad v. Massanari*, 260 F.3d 887, 890 (8th Cir. 2001) (citing *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir.1997)) ( "failure to seek medical

16

assistance for her alleged physical ... impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits").

After carefully weighing the credibility of Lyon and the witnesses, the ALJ formulated Lyon's residual functional capacity (RFC). The Eighth Circuit has noted that residual functional capacity is a determination based upon all the record evidence. *See Pearsall v. Massanari*, 274 F.3d 1211, 1217-18 (8th Cir. 2001) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); *Dykes v. Apfel*, 223 F.3d 865, 866-67 (8th Cir. 2000) (citing 20 C.F.R. § 404.1545; SSR 96-8p at pp. 8-9).

In this case, the ALJ found that Lyon had the residual functional capacity to do the full range of light work with the following exceptions: no repetitive overhead reaching with the left arm, no fine manipulation with the left hand, and no use of the left arm below table level. (Tr. 29, 102.) There is substantial evidence in the record to support that finding.

The ALJ properly did not include any mental limitations in his residual functional capacity findings because there was no credible evidence they caused any work-related limitations. (Tr. 29.) Lyon was able to sustain significant work activities and perform substantial gainful activity despite her alleged mental limitations. Furthermore, Dr. Parmet found there were no work-related activities that Lyon was mentally unable to perform, including understanding and memory, sustained concentration and persistence, social interaction, or adaption, that could not be performed by Lyon. (Tr. 576.) Thus, contrary to Lyon's arguments, there was no need to further develop the record regarding

17

Lyon's alleged mental limitations because the record already contained adequate evidence upon which the ALJ could make his decision. *See Tellez v. Barnhart*, 403 F.3d 953, 956-57 (8th Cir. 2005).

> **D. The ALJ Properly Determined that Lyon Was Able to Perform Her Past Relevant Work.**

The ALJ was required to evaluate whether Lyon was able to perform her past relevant work in light of her residual functional capacity. *See Martin v. Sullivan*, 901 F.2d 650, 652 (8th Cir. 1990). Residual functional capacity involves a medical evaluation of physical, mental, and other impairments, and other evidence of any limitations, including testimony by the claimant. *Id*. Based on his review of the objective medical evidence, and his conclusion that Lyon's subjective complaints were not credible, the ALJ reasonably concluded that Lyon had the residual functional capacity to perform her past work as a sales clerk. (Tr. 29.) That job, as it is performed in the national economy, is performed at the light level of exertion. (Tr. 104.) "Where the claimant has the residual functional capacity to do either the specific work previously done or the same type of work as it is generally performed in the national economy, the claimant is found not to be disabled." *Lowe v. Apfel,* 226 F.3d 969, 973 (8th Cir. 2000) (citing *Jones v. Chater*, 86 F.3d 823, 826 (8th Cir.1996)); *see also* 20 C.F.R. § 404.1520(e), § 416.920(e).

The burden did not shift to the Commissioner to show other work that Lyon could perform because the evidence indicated that Lyon could return to her past relevant work as a sales clerk. Thus, the testimony of the vocational expert was not required to prove that Lyon could perform other work. *See Barrett v. Shalala*, 38 F.3d 1019, 1024 (8th Cir.

18

1994); *Grace v. Sullivan*, 901 F.2d 660, 662 (8th Cir. 1990). The ALJ, however, solicited the testimony of the vocational expert and that testimony supported the ALJ's determination that Lyon was not disabled. Asked a hypothetical question which set forth Lyon's limitations in a manner consistent with the ALJ's eventual findings concerning Lyon's condition and functional limitations, the vocational expert testified that Lyon could perform her past relevant work as a sales clerk. (Tr. 104.)

Although the hypothetical question must set forth with reasonable precision the claimant's impairments, *Starr v. Sullivan*, 981 F.2d 1006, 1008 (8th Cir. 1992), it need only include those impairments and limitations found credible by the ALJ. *See Pertuis v. Apfel*, 152 F.3d 1006, 1007 (8th Cir. 1998); *Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997). Discredited subjective complaints are properly excluded from a hypothetical question so long as the ALJ had reason to discredit them. *See Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005). The hypothetical question posed to the vocational expert in this case was properly formulated in that it included only the limitations which the ALJ found credible. Because the hypothetical question included those impairments the ALJ found credible, and excluded those he discredited for legally sufficient reasons, the vocational expert's testimony that Lyon could perform her past relevant work was substantial evidence in support of the ALJ's determination. *See Miller v. Shalala*, 8 F.3d 611, 613-14 (8th Cir. 1993).

**III. Conclusion**

A review on the record as a whole of the ALJ's decision reveals that it is supported by substantial evidence. Accordingly, it is hereby

ORDERED that Lyon's Motion for Summary Judgment [Doc. # 10] is DENIED. The decision of the Commissioner is AFFIRMED.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: May 16, 2006  
Jefferson City, Missouri